

STATE OF MICHIGAN

4TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF JACKSON

GREAT LAKES HOME HEALTH
SERVICES, INC. and GREAT
LAKES ACQUISITION CORP,

        Plaintiffs,
v                                  File No.: 2020-888-CB

CAROLYN EWING, KASEY STUMP,
CARE EVOLUTIONS CONSULTING,
LLC, CARELINE HEALTH GROUP-MI,
LLC, and CARELINE HOLDCO, LLC,

        Defendants.
_____/


MOTION

BEFORE THE HONORABLE RICHARD N. LaFLAMME, CIRCUIT COURT JUDGE

Jackson, Michigan - Friday, June 11, 2021


APPEARANCES:

For the Plaintiffs:    **THOMAS J. DAVIS (P78626)**
                              Kienbaum, Hardy, Viviano,
                              Pelton & Forrest, PLC
                              280 N. Old Woodward Ave., Suite 400
                              Birmingham, MI 48009
                              (248) 645-0000


TRANSCRIBED BY:    THERESA'S TRANSCRIPTION SERVICE
                            Sally Fritz, CER #7594
                            P.O. Box 21067
                            Lansing, Michigan 48909-1067

```
 1        go fishing.
 2                    THE COURT:  All right.  Thank you, gentlemen.
 3        So with respect to the order that was entered, I don't know
 4        why I even signed such an order, but unfortunately, when I
 5        get a huge stack of orders to sign I'm not always careful to
 6        see does it have the little stamp at the top that says it
 7        was submitted under the seven day rule, and the period for
 8        filing objections has passed, and therefore, it's okay to
 9        sign it.  I never should have signed that order in the
10        manner that it was presented.  That was my error.
11                    So let's talk about what should be the
12        correct order.  And I believe I saw a proposed order
13        attached to the plaintiff's motion.  Is there any --
14        (multiple speakers)--
15                    UNIDENTIFIED SPEAKER:  Exhibit 11, your
16        Honor.
17                    THE COURT:  Yeah, I see it.  Is there any
18        argument that this order does not, in fact, reflect my
19        ruling on this issue?
20                    MR. O'SHEA:  Your Honor, it was my
21        understanding that -- and I went back and looked at the
22        transcript, that when you ordered that Ms. Deary only have
23        to produce documents that she had received regarding Elara
24        or received from defendants or given to defendants regarding
25        the plaintiffs, that that applied generally to the subpoena.
```

1      If I was mistaken about that I apologize and I'll certainly
2      stand by whatever the court intended to state with regard to
3      the documents.
4                THE COURT:  If she's got DEM Holding
5      documents or communications that pertain to the defendants
6      she should have to produce those.
7                MR. O'SHEA:  I agree, your Honor.  There are
8      no such documents.  You know, she'll certainly -- I don't
9      know what -- we just went through a whole explanation about
10     how the DEM Holdings entity that she is involved in has no
11     connection to the defendants.  It's the other DEM Holdings
12     that Mr. Mead operates that connects to the defendants.
13               THE COURT:  But two entities that --(multiple
14     speakers)-- that's -- that use the same e-mail domain?  I
15     mean, there's obviously some connection between those
16     entities.
17               MR. O'SHEA:  Just so -- I'm not saying that
18     they're more than --(multiple speakers)-- entities, just
19     that her entity has no connection to the business of the
20     defendants.  It's an unfortunate confusion regarding the e-
21     mail.  I will certainly put her -- instruct Ms. Deary to
22     conduct a search of her DEM Holdings e-mails regarding what
23     the court thinks she should specifically look for.  Because
24     I'm confident that she's not gonna find anything.
25               MR. DAVIS:  And, your Honor, again, I mean, I

```
 1        just -- just to go back, I just want to be clear, because
 2        the court's order -- again, we're hearing something
 3        different from the defendants than from what the court
 4        ordered.  Again, the court said, and I'm quoting, this is
 5        page 13, "I'm going to limit, if she has Elara documents
 6        that she received from the defendants, that's certainly
 7        gonna be relevant.  If she has Elara documents that are
 8        related in any way to the defendants that's fair game for
 9        inquiry."
10                    And then you said, "But if she has Elara
11        documents from another source that have nothing to do with
12        the defendants I'm not gonna allow that."  The defendants
13        here, Careline, Care Evolutions, Stump, Ewing, any documents
14        from DEM Holdings' e-mail account that relates to those four
15        defendants is part of the court's order from the first
16        hearing.  And again, we're hearing this artificial
17        limitation that it had to be to and from the defendants.
18        No, she could be discussing it with somebody else at DEM
19        Holdings.  It didn't have to go to Stump and Ewing but it's
20        still relevant to the case if she's talking about Careline,
21        which we believe she's an agent of, or Stump and Ewing, who
22        are the other defendants, or Care Evolutions, the third
23        defendant.
24                    So, you know, I believe our order, if you
25        look at it, your Honor, look at the transcript and look at
```

1     our order, it tracks exactly what the court's words were and
2     that's the order that should be entered.
3                 And on all the topics for the document
4     searches, it's very clear, and we'd point out her testimony
5     again, she didn't search DEM Holdings, she didn't search for
6     documents related to St. Croix, who she also solicited Stump
7     and Ewing to work for in connection with the same
8     transactions here, and she didn't search for anything about
9     the Hospice company that we mention in there.  So there's
10    just a lot of material that would have been responsive that
11    she just failed to search for at all.
12                 And I want to just make clear that when the
13    order comes out it's not going to be artificially limited
14    again as if, you know, as if Deary -- Ms. Deary won the
15    motion last time when she didn't.  They took all the court's
16    language and order from the first hearing, which
17    unfortunately, the fact that they didn't follow it is why
18    we're here again today.  I don't want to be before the court
19    a third time on this, your Honor.
20                 THE COURT:  All right.  I am going to sign
21    the substitute order.  Ms. Deary absolutely needs to search
22    her documents, search her e-mail to find the documents that
23    are responsive to the subpoena, if there are any, and
24    produce them.  And she may be deposed concerning those
25    issues and if I see the kind of answers that are exemplified

1   in the excerpts that were given to me again I absolutely may
2   hold her in contempt.  I'm telling you, it sounded like Bill
3   Clinton's answers to me, tell me what the def -- depends on
4   what the definition of "is" is.  I expect more responsive
5   answers than that.  I don't want to see any gamesmanship.
6   If I see that there could be consequences.  So I'm signing
7   the substitute order.
8                   MR. O'SHEA:  Your Honor, could I -- your
9   Honor, may I clarify one thing?  So --(undecipherable)--
10  that Ms. Deary conduct the search, produce the documents and
11  then the plaintiffs will, depending on what she produces,
12  notice her deposition again?  If she finds no documents is
13  she to be deposed again?
14                  THE COURT:  I'm not gonna limit whether or
15  not there's a choice to re-depose her.  I understand why the
16  frustration and why the deposition was entered prematurely,
17  but I'm gonna leave it to Mr. Davis to decide whether or not
18  he wants to re-depose her.
19                  MR. DAVIS:  And, your Honor, just so I can
20  clarify, because some of the evasive answers, there were
21  evasive answers about questions as simple as past tense,
22  that you used to work at Careline, and you saw that, so I
23  just don't want there to be any suggestion that, as Mr.
24  O'Shea suggested just now, that it has to only be related to
25  the documents, because her evasive answers were far beyond

```
1        just not searching --(multiple speakers)--
2                    THE COURT:  I'm not -- I'm not limiting the
3        scope of the deposition any more than I did previously.  I'm
4        simply making it clear, I saw definite indications on Ms.
5        Deary's part of evasiveness, particularly on simple, simple
6        phrases and simple terms.  I don't want to see that again.
7        So instruct your client accordingly, Mr. O'Shea.
8                    MR. O'SHEA:  Understood, your Honor.
9                    THE COURT:  All right, we'll be sending out
10       that amended order.  Thank you, gentlemen.
11                   UNIDENTIFIED SPEAKER:  Thank you.
12                   (At 10:59:59 a.m., hearing concluded)
13
```