**EXHIBIT C**

1        STATE OF MICHIGAN

2     IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

3    _____
4    GREAT LAKES HOME HEALTH SERVICES,
5     d/b/a ELARA CARING
6                         Plaintiff,
7    vs.                                    File No. 20-154-CB
8
9    BRANDI VANDEUSEN, CARELINE HEALTH
10    GROUP Michigan, CARELINE PALLIATIVE
11    CARELINE HOLDCO, LLC.
12
13                    Defendant.
14    _____/

15                    CROSS-MOTIONS
16    BEFORE THE HONORABLE JOYCE DRAGANCHUK, CIRCUIT COURT JUDGE
17         LANSING, MICHIGAN – WEDNESDAY, JULY 14, 2020

18   APPEARANCES:
19   For the Plaintiff:          Thomas Davis-P78626
20                               280 N.Old Woodward Ave-Suite 400
21                               Birmingham, Michigan 48009
22                               248-645-0000
23
24
25   For the Defendant:          Brendon R. Beer-P65365
26                               405 South Jackson Street
27                               Jackson, Michigan 49201
28                               517-787-8570
29
30
31
32
33
34
35   RECORDED BY:                Susan C. Melton, CER 7548
36                               Certified Electronic Reporter
37                               (517) 483-6500 x6703
38
39
40
41
42
43

1

1    Appeals case nearly dead on point that says these referral

2    sources are not a protectable business interest.

3            THE COURT: Okay.

4            MR. BEER: And so, I'm not inclined to give a lot

5    of credence to that Florida case and I would suggest your

6    Honor should not either.

7            THE COURT: All right. Thank you.

8            MR. BEER: Thank you.

9            THE COURT: Well, first, a little background.

10    There are four counts in the complaint. Count one is

11    breach of contract. It's based on an employment agreement

12    and a confidentiality and Non-Compete Agreement. They are

13    dated the same day. And under those agreements, there are

14    Non-solicitation and Non-Compete provision. Count two is

15    for tortious interference, which is brought against the

16    Careline Health Group only. Count three is for unjust

17    enrichment and Count four is for civil conspiracy brought

18    against all the defendants.

19         The bulk of these cross-motions deal with the

20    breach of contract claim and specifically the Non-

21    solicitation and the Non-Compete provision. So, I'll start

22    there.

23         First of all, plaintiff requests summary

24    disposition with regard to the Non-solicitation clause of

25    the contract. The Non-solicitation provision provides

1        "during the term of this agreement and following

2    employees voluntary or involuntary termination from

3    employment with Great Lakes, employee agrees that she

4    shall not directly or indirectly either individually or on

5    behalf of or in conjunction with another person,

6    organization or company contact or solicit any Great Lakes

7    client including but not limited to referral source

8    patient, patient-advocate or family member or any other

9    source of Great Lakes business or business referral for

10   the purpose of soliciting the Great Lakes client to do

11   business with anyone other than Great Lakes. For purposes

12   of this subsection, Great Lakes client shall include a

13   Great Lakes client at the time of the termination of

14   employee."  That's the end of the quote from the contract.

15       So, at least in the briefing, the plaintiff is

16   exactly right in pointing out that the Non-solicitation

17   clause is a prohibition on Ms. Van Deusen's conduct

18   regardless of whether she's working for a competitor or

19   not. And the analysis of whether Careline Health Group,

20   which provides hospice care and Careline Physician

21   Services, which does not, are competitors is just not

22   applicable to the Non-solicitation  clause based on the

23   language of the contract, which is where we always start.

24       The plaintiff on this issue of Non-solicitation

25   points to Ms. Van Deusen's own deposition where she

1    acknowledges that she brought Careline Hospice personnel

2    including the Careline Group CEO Joe Mead to meet with the

3    referral sources so they could solicit hospital hospice

4    referrals. And that in some cases, she brought the hospice

5    representatives to meet with the same people that she had

6    solicited for hospice in the past. She also said in her

7    deposition that the hospice representatives who went to

8    these meetings went to obtain business for Careline

9    Hospice and that hospice referrals were sometimes

10   generated at the meeting and that she, Ms. Van Deusen,

11   facilitated these meetings in that she made sure the key

12   decision makers were present and either explicitly or

13   implicitly vouch for the hospice provider.  The defendants

14   point to other testimony and argue that Ms. Van Deusen did

15   not sell any hospice care at the meetings and always

16   deferred to the hospice representative if the referral

17   source had any questions about hospice and that the, these

18   meetings did not happen extremely frequently.

19          Here on this matter, the issue of whether, I'm

20   sorry-, what, what here the issue that's been presented is

21   I believe a disputed issue of fact.  Whether Ms. Van

22   Deusen was actually working in conjunction with the

23   hospice representative to, to get a hospice referral is an

24   issue that the jury has to decide. There is as I've

25   indicated evidence brought forth on each side from the

44

1    plaintiffs evidence and the plaintiff even puts it this

2    way, that it's sort of like a 'wink, wink' situation when

3    she goes to the referral source with the hospice

4    representative. In order to make that inference, a finder

5    of fact would have to make that inference and decide

6    whether they were actually working in conjunction with

7    each other., the language in the contract does prohibit

8    working in conjunction with each other. And, and the

9    defendant also their, their testimony that they point to

10   is that they, the hospice representative again and Ms. Van

11   Deusen remain separate and did not each participate in

12   the--, Ms. Van Deusen did not participate directly in the

13   selling of hospice care. And for those reasons, I think

14   that a jury has to decide that. So, there is a disputed

15   issue of fact with respect to the Non-solicitation clause

16   of the contract.

17        The plaintiff also request summary disposition

18   with respect to the Non-Compete clause in the contract.

19   And the defendants request summary disposition in their

20   favor because the defendants position is that the Non-

21   Compete is just not enforceable because it's an

22   unreasonable restraint on trade. Here the issue of whether

23   Elara and Careline Physician Services are competitors is

24   relevant because the Non-Compete provision provides

25        "during the term of this agreement and for two

45

1   years following employees voluntary or involuntary

2   termination from employment with Great Lakes, Employee

3   agrees that she shall not directly or indirectly in either

4   individually or on behalf of or in conjunction with

5   another person, organization or company engage in any self

6   employment, employment with any other entity, work as a

7   consultant or independent contractor of have full or

8   partial ownership of any entity that provides or consults

9   in providing home health care or hospice care within Great

10  Lakes market area.  Great Lakes market area shall be

11  defined as those counties in which Great Lakes has

12  received Medicare certification at the time of employee's

13  voluntary or involuntary separation from Great Lakes."

14          Defendants maintain that Careline Physician

15  Services does not provide any hospice and it's not

16  licensed to provide hospice care. So, it doesn't fall

17  within the language of the contract and Ms. Van Deusen

18  isn't violating the contract by working solely for

19  Careline Physician Services.  I think it is indisputable

20  that Careline Physician Services doesn't provide hospice

21  care. But, the plaintiff points to two reasons that Ms.

22  Van Deusen is in violation of the Non-Compete. First, the

23  contract says that she may not engage in the activity

24  either individual or in conjunction with another company

25  and second, the corporate structure is such that there is

1   no appreciable difference between working for Careline
2   Physician Services and Careline Health Group. I'm gonna
3   take a stab at describing what this, what I see is a
4   factual dispute is about. It's a little complicated but,
5   DEM Holding Group owned by Joseph Mead owns Careline
6   Holdco. Careline Holdco has a subsidiary, I'm sorry-,
7   Careline Holdco I wanted to go in a different direction,
8   owns Careline Health Group. It's Careline Health Group
9   that provides the hospice care and that I think is
10  indisputably a competitor of the plaintiff.

11         But, Careline Holdco has a subsidiary CPC
12  Operating. Joseph Mead is the CEO of that subsidiary. They
13  provide management services to Careline Palliative Care.
14  And doing business as Careline Physician Services, Dr.
15  Kielhorn runs that operation. He's referred to as the
16  owner. He's treated as an employee and actually, Careline
17  Palliative Care pays management fees to CPC Operating for
18  their management services and CPC Operating pays the
19  employee Dr. Kielhorn out of those management fees as the
20  employee of CPC Operating. And it's that Careline
21  Physician Services, Dr. Kielhorn for which Ms. Van Deusen
22  works.

23         So, I hope that I got that right. But, I think
24  that that illustrates the factual dispute here whether Ms.
25  Van Deusen worked in conjunction with another company or

47

1    whether the corporate structure is such that there's no

2    difference between the two, either one of those theories I

3    think are both factual disputes for the jury.

4          So, in other words, the plaintiffs version that

5    Ms. Van Deusen accompanied hospice providers from Careline

6    Health Group when meeting with referral sources

7    constitutes again that 'wink, wink' kind of arrangement.

8    Versus the defendants version that Ms. Van Deusen and a

9    hospice provider went there together. But, Ms. Van Deusen

10   offered no information about hospice services and always

11   deferred to the hospice provider are just competing

12   versions of the facts. And I can't accept either one as

13   true without fact finding and that's particularly true

14   since just to accept plaintiffs version, an inference has

15   to be made that there's some kind of a 'wink, wink'

16   understanding. And, and second theory about the corporate

17   structure, I think also takes a fact finder to resolve

18   whether in fact there is no appreciable difference between

19   the two providers and whether they acted as one.

20          I will say and maybe I shouldn't say this, but I

21   don't think piercing the corporate veil is the correct

22   framework for that. Piercing the corporate veil allows the

23   corporate protection to fall away and liability to attach

24   to an individual or I suppose, it could be another

25   company.  But, it's a method of attaching liability. It

48

1    has to be plead in some form and it's a path to liability.

2    It does require a fraudulent or improper purpose. Here, I

3    think, I just see it as a factual dispute about whether

4    Ms. Van Deusen was de facto acting for Careline Health

5    Group. But, if the plaintiff wants to prove something more

6    difficult than that, then you know, go at it.  But,

7    there's a factual dispute either way. So, I would not

8    grant summary disposition in that regard.

9         Now, the defendants say that the Non-Compete is

10   overbroad and it's unenforceable because referral sources

11   are not a protectable interest. They're not confidential

12   and that Ms. Van Deusen is being prohibited from using her

13   own general knowledge and skill.  This does not involve a

14   factual dispute because a jury doesn't decide this.  It's

15   a matter for the Court to decide and to assess whether or

16   not the Non-Compete either standing by itself or narrowed

17   complies with MCL 445.774(a)(1). And in this regard, both

18   sides and I would add too, normally, the Court does it at

19   the outset of the case when injunctive relief is being

20   sought as to the Non-Compete. But, that wasn't done here

21   and so, I'm doing it rather late in the game.

22        But, nevertheless, the Court has the ability to

23   say it, it stands, it's enforceable, it falls, it is not

24   or it is something in between and it can be modified and

25   tailored to narrow it and make it enforceable. So, both

49

1    sides agree there's no published authority in Michigan

2    that addresses referral sources as legitimate protectable

3    business interest. But, we do have a couple cases to work

4    with and as far as Michigan cases go.  They're at least

5    helpful for either what they do show or what they don't

6    show and how they are distinguished.

7         So, the first one is the Follmer case, F-O-L-L-

8    M-E-R.  And that's the Michigan Supreme Court case from

9    1984 that I think both sides have cited perhaps. And I

10   want to talk about this case because I think it

11   illustrates only that exploiting confidential information

12   is not necessary in order to have an enforceable Non-

13   Compete.  But, it can be part of an enforceable Non-

14   Compete.  So, in Follmer, the employee had a contract that

15   required the employee to pay his employer for the goodwill

16   or the business in respect to a client or a customer if

17   the employee rendered services to that client or customer

18   within three years of termination of employment. And the

19   Court held that the contract was not an unreasonable

20   restraint of trade because it protected confidential

21   information including information regarding customers.

22        And the matter was remanded for determination of

23   whether the employee actually had access to confidential

24   information that provided him with an unusual opportunity

25   to as they put it 'obtain the patronage of particular

50

1    clients of his former employer.'  So, the Supreme Court in
2    that case used access to confidential information as a
3    means to limit what would otherwise be a very broad
4    restraint. Because the restraint didn't limit it to
5    confidential information. But, that's how they limited it
6    and they explained it rather well and this is in Footnote
7    15,

8         "a party who develops or possesses confidential
9    information or trade secrets", which are not at issue
10   here, " belonging to his employer should not be allowed
11   to--, should not be allowed complete freedom to terminate
12   his association and then use this very knowledge to
13   undercut the employer who had taken him into his
14   confidence. This conduct which amounts to a virtual stab
15   in the back gives a competitor an unfair advantage and is
16   inconsistent with our principles of fair play."

17        And of course, they're citing another federal
18   case but that's what they say in footnote 15. But, I think
19   we've learned too that access to confidential information
20   is not the only way that a Non-Compete can be enforced.
21   And that takes me to the case that we've called either
22   Bartlett, B-A-R-T-L-E-T-T, or Northern Michigan Title.
23   That's the unpublished Court of Appeals case from 2005.
24   This was a Non-Compete clause that prohibited the employee
25   from engaging in the title insurance business in

1    Charlevoix County for a period of 5 years after

2    termination. And that was unenforceable because it

3    completely prohibited the employee from engaging in the

4    title insurance business which amounted to just a

5    restraint on the competition.

6            But, here's what the Court of Appeals had to say

7    about the Non-Compete.  Maybe I got something a little

8    different out of this then the attorneys. But, this is

9    what I read that they found as their criticism with this

10   very broad, no work in the title insurance business for

11   five years, this very broad Non-Compete.  They say, first

12   of all,

13           "the employee would not be permitted to obtain

14   referrals from sources that never had a relationship with

15   plaintiff. The employee would never be able to offer title

16   insurance services to clients who never had or never would

17   have given business to plaintiff in the first place.

18   There are seldom repeat clients in the title insurance

19   business and business is developed through referral

20   sources of which there are many and which are readily

21   identified in the community."

22           So, while the Follmer Court used confidential

23   information as their way of validating Non-Compete, the,

24   the Bartlett case or the Northern Michigan Title case

25   didn't use confidential information, they looked at these

1     other factors. And as a matter fact, they said that the

2     confidential information is a claim that stands alone. So,

3     they didn't even take that into account the way the

4     Follmer Court did.

5           But, in any event, I think those, those factors

6     that the Northern Michigan Title case pointed to are

7     valuable. And so, from those cases, Follmer and the

8     Northern Michigan Title case, I take the following

9     referral sources need not be confidential in order to

10     enforce the Non-Compete. And I think In this case, they

11     aren't. I'll talk about that maybe in a minute. But, there

12     is other confidential information that go along with the

13     referral sources in this case that I think is at issue

14     here.

15           Unlike Bartlett, the Non-Compete or unlike

16     Northern Michigan Title, the Non-Compete here is limited

17     to hospice care and to hospice care in the Great Lakes

18     market area, which is the counties in which Great Lakes

19     have received Medicare certification at the time of Ms.

20     Van Deusen's separation. So, it's distinguishable from one

21     of the factors in Barlett for that reason.

22           Also, and this is an important one, there may

23     not be repeat clients in hospice care. But, there most

24     certainly are repeat referrals sources. And this was

25     described in the deposition testimony. It was described in

1   deposition testimony as facilities having not only

2   preferred providers, providers that they would go to again

3   and again and again. But, in some cases, even exclusive

4   providers. So, one single provider that that facility

5   would always go to as a referral for their patient as a

6   provider for their patient.  So, developing a referral

7   source in this case has potentially long-lasting rewards

8   and the plaintiff does in fact compete to achieve that.

9          Now, there was a lot of argument in the briefing

10   about whether referral sources are confidential or not. I,

11   I reviewed all of the deposition testimony that both sides

12   pointed to and even the testimony that the plaintiff

13   pointed to and I just don't think it supports that just a

14   referral source by itself is confidential. It was

15   explained by various different witnesses as you walk in

16   the door of a facility and you ask to talk to someone that

17   would be relevant to what you are there for and they give

18   you someone and maybe then you work through it a little

19   bit from there and get to higher levels of management. So,

20   yes, can you open up a phonebook and see for a facility

21   who it is you need to talk to?  No. But, is it a secret?

22   No. You just go to the facility and you start asking

23   questions and that's how it was described. But, it was

24   also described in the testimony that developing a referral

25   source and getting that coveted spot of a preferred

54

1    provider or even an exclusive provider, it has, it
2    involves much, much more than just walking in the door and
3    trying to drill down on who it is you need to talk to.

4           And one of the ways that it's done is well,
5    developing the relationship and working that source and
6    doing it repeatedly. And, and I get, I think even if we
7    got to that point, it could be argued that that's Ms. Van
8    Deusen's talent and her skill no doubt as an excellent
9    salesperson. But, there's even more to it than that
10   because there was an exchange of company information where
11   Ms. Van Deusen obtained information from other account
12   executives even about the referral sources, what works,
13   what doesn't and what strategies can be undertaken to
14   improve business?  So, that's much different than the
15   Northern, the Northern Michigan Title case.  And having
16   acquired the information and having built relationships
17   with referral sources that grow into preferred provider or
18   even exclusive provider status using the resources that
19   were available through the plaintiff makes the Non-Compete
20   in the area of hospice care for the counties where Great
21   Lakes has Medicare certification, a reasonable restraint
22   on trade and a protectable business interest.

23          Again, like going back to Follmer and Footnote
24   15, you can't use the confidential information to undercut
25   the employer who had taken the employee into, into their

55

1    confidence, that amounts to a virtual stab in the back and

2    gives the competitor an unfair advantage and is

3    inconsistent with our principles of fair play.

4            So, I do not find the Non-Compete for that

5    reason to be unenforceable. Now, there are maybe some,

6    there is some fine tuning that could be done on it and I

7    may agree with some of the things that the defendants

8    point out. They say that the line of business restriction

9    is unreasonable. The contract prohibits employment for any

10   entity that provides home health care or hospice care. And

11   defendant argues that it should be narrowed to hospice

12   care only. I agree. Even though the plaintiff says that

13   Ms. Van Deusen sold home health care, hospice and

14   palliative care. The deposition testimony doesn't really

15   support that. The plaintiff directs me to Ms. Van Deusen's

16   deposition at page 35. But, she says she never sold home

17   health care. She says and I'm not sure I know what this

18   means, but she says she "gathered the information and sent

19   it in." And then she says but she never sold home health

20   care services. And so, for that reason, I think it does

21   have to be narrowed and also, palliative care wasn't even

22   sold by the plaintiff at the time of Ms. Van Deusen's

23   separation. So, I think it has to be further narrowed as

24   well. I agree again with the defendant that it should be

25   narrowed to hospice care only.

1          And finally, the defendants say that the

2      duration is unreasonable. The duration of two years is not

3      unreasonable. There's many reported decisions holding that

4      two years on a Non-Compete is not unreasonable. I, I won't

5      just rely on that though. I think it probably has to be

6      judged against the facts of the particular case. And here,

7      given the testimony about the development of relationships

8      with referral sources and the evolving into a preferred or

9      an exclusive provider, two years is not unreasonable.

10         And then, the tortious interference, a jury

11     could find that Ms. Van Deusen breached the contract.

12     Therefore, the defendants aren't entitled to summary

13     disposition on the tortious interference. And I, but I

14     cannot find, I also cannot find as a matter of law, that

15     Careline made an unjustified instigation of a breach of

16     contract because the jury has to decide if there was a

17     breach. And even if there was, whether Careline

18     unjustifiably instigated it.

19         As to the civil conspiracy, the defendant says

20     Ms. Van Deusen can't conspire to breach her own contract.

21     The plaintiff says that the claim is against the three

22     Careline entities. If memory serves me correctly, it

23     actually is against all defendants. But, I'll take what

24     the plaintiff says as a cure on that issue about breaching

25     your own--, or conspiring to breach your own contract.

1    With respect to unjust enrichment, an implied contract

2    claim can only made where there's no expressed contract.

3    There is an expressed contract here.  There is no basis

4    for an unjust enrichment claim.  And then, the contractual

5    attorney fees is just simply premature given that the

6    breach of contract claim has to be decided by a jury.

7              So, I'm denying the plaintiffs Motion for

8    Partial Summary Disposition. I'm denying the defendants

9    Motion for Summary Disposition except with respect to the

10   things that I've mentioned.  I guess that would be the,

11   there's no unjust enrichment claim and I am narrowing the

12   scope of the Non-Compete to comply with the law. And I

13   will need someone to volunteer to submit an order that

14   reflects 'for the reasons stated on the record'.

15             MR. BEER: I will volunteer, your Honor. I was

16   taking extensive notes.

17             THE COURT: Great. Thank you. And in case you

18   forget, I livestreamed it on my Youtube channel and I

19   leave those recordings up so you can review.

20             MR. DAVIS: Thank you, your Honor.

21             THE COURT: Thank you. And that will conclude

22   this hearing.

23             MR. BEER: Thank you, your Honor.

24             (Hearing concludes at 3:20 PM)

25

```
1        STATE OF MICHIGAN)

2                        )

3        COUNTY OF INGHAM)

4

5

6

7

8

9

10       I certify that that this transcript, consisting of 59

11   pages, is a complete, true, and correct transcript of the

12   proceedings and testimony taken in this case on Wednesday,

13   July 14, 2021.

14

15

16   August 6, 2021                      _____

17                                       Susan C. Melton-CER 7548

18                                       30th Circuit Court

19                                       313 West Kalamazoo Avenue

20                                       Lansing, Michigan 48901

21                                       517-483-6500 ext.6703

22
```

59