## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

CHERI LYN DEARY,                          Case No. 21-11587
                                          Honorable Laurie J. Michelson
　　　　　Plaintiff,                       Magistrate Judge R. Steven Whalen

vs.

GREAT LAKES ACQUISITION CORP.
d/b/a GREAT LAKES CARING and
GREAT LAKES HOME HEALTH SERVICES INC.,

　　　　　Defendants.

_____/

## PLAINTIFF'S BRIEF IN RESPONSE TO
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
## <u>FIRST AMENDED COMPLAINT UNDER RULES 12(b)(1) and 12(b)(6)</u>

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.   Whether Plaintiff's declaratory judgment count should be dismissed under the *Brillhart* abstention doctrine?

     Plaintiff says "No."
     Defendants say "Yes."
     This Court should say "No."

2.   Whether Plaintiff's declaratory judgment count should be dismissed under the *Colorado River* abstention doctrine?

     Plaintiff says "No."
     Defendants say "Yes."
     This Court should say "No."

3.   Whether Plaintiff fails to state a claim for tortious interference with contract and unjust enrichment?

     Plaintiff says "No."
     Defendants say "Yes."
     This Court should say "No."

4.   Whether Plaintiff fails to state a claim for declaratory judgment?

     Plaintiff says "No."
     Defendants say "Yes."
     This Court should say "No."

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ................................................................i

CONTROLLING / MOST APPROPRIATE AUTHORITY ................................. iv

INTRODUCTION ................................................................................................1

RELEVANT FACTS ...........................................................................................2

ARGUMENT .......................................................................................................4

I.     The *Brillhart* Abstention Doctrine Is Inapplicable To The FAC.................4

    A.     Because the FAC includes additional coercive and non-declaratory claims, Brillhart is inapplicable, and this Court could only possibly abstain under Colorado River abstention doctrine ...................................................................4

II.    Dismissal Of The FAC Is Likewise Not Warranted Under The *Colorado River* Abstention Doctrine .....................................................................................7

    A.     Factor 1: the state court has not "assumed jurisdiction over any res or property".............................................................................................................9
    B.     Factor 2: the federal courthouse is not less convenient ............................9
    C.     Factor 3: there is no threat of piecemeal litigation and it is Defendants, not Plaintiff, who has engaged in gamesmanship ..................................................10
    D.     Factors 4 and 7: the Federal Court obtained jurisdiction first and the state court case has not progressed at all since filing ................................................13
    E.     Factors 5, 6, and 8: the remaining factors also disfavor abstention or, at best, marginally favor abstention ........................................................................14
    F.     The *Colorado River* factors and law do not support abstention ..............14

III.   Plaintiff States Viable State Law Claims Under Rule 12(b)(6) .................15

    A.     Standard of review .................................................................................15
    B.     Defendants distort the premise of plaintiff's FAC...................................16
    C.     Plaintiff states valid claims for tortious interference and unjust enrichment unrelated to litigation ......................................................................................18

1.  Plaintiff states a proper claim for tortious interference ...........................18
   a.  Plaintiff has properly plead a tortious interference claim....................20
2.  Plaintiff states a claim for unjust enrichment...........................................21

IV.    This Court Should Not Dismiss the Declaratory Judgment Count............23

CONCLUSION ......................................................................................................25

## **CONTROLLING / MOST APPROPRIATE AUTHORITY**

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)

*Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, (3d Cir. 2017)

*Romine v. Compuserve Corp.*, 160 F.3d 337 (6th Cir. 1998)

*Osterle v. Wallace*, 272 Mich. App. 260 (2006)

15 Mich. Civ. Jur. Libel and Slander § 50

*Keywell and Rosenfeld v. Bithell,* 254 Mich. App. 300 (2002)

## **INTRODUCTION**

The Motion to Dismiss filed by Great Lakes Acquisition Corp. and Great Lakes Home Health Services, Inc. (collectively, "Elara" or "Great Lakes") fails to recognize a critical fact that make all of its legal authorities distinguishable: In 2019, this Court presided over an action filed by Elara against Ms. Deary, asserting the same central claim that is at issue herein. Specifically, Elara alleged, incorrectly, that Ms. Deary is somehow behind the operation and ownership of Careline Health Group-MI, LLC ("Careline"). Discovery will bear out that the predicate for the claim is false. Ms. Deary is not, and has never been, an owner of Careline and is not behind the operation of that entity.

This Court dismissed Elara's 2019 lawsuit because Elara failed to allege a plausible claim against Ms. Deary. Elara never argued that the case was not properly before this Court. Indeed, it acceded to the Court's jurisdiction by filing a First Amended Complaint in that case. Subsequent to the dismissal of the action, Elara spent the following two years pursuing extensive litigation against numerous former employees and other health care providers, using discovery in those cases to drum up support for their fundamentally flawed claims against Ms. Deary.

Then, after Ms. Deary filed this lawsuit, Elara filed a separate lawsuit in Jackson County Circuit Court, in which it named Careline in an attempt to defeat this Court's diversity jurisdiction. The claims asserted against Careline in Jackson County Circuit

Court are separate and independent to the claims against Ms. Deary, and can proceed without her.   Indeed, Elara does not contend that Careline is a necessary and indispensable party to this action.

This Court is the proper forum for the claims between the parties to be litigated. The same central claim was before the Court in 2019 that is before the Court now. Moreover, Careline is not a party to this action.

## **RELEVANT FACTS**

Plaintiff Cheri Lyn Deary ("Ms. Deary") is a former founder and employee of Great Lakes Home Health Services Inc. ("GLHHS"), which she created with her husband, William Deary, in 1994.   ECF No. 11, PageID.304. The Dearys grew GLHHS into a national home health care network with over 2,600 employees. (*Id*.). In 2014, Deary sold all of her stock in GLHHS to a private equity firm, but remained employed by the company. (*Id*.) In 2012, GLHHS was acquired by Defendant Great Lakes Acquisition Corp. (*Id*.) Great Lakes Acquisition Corp. is, together with other affiliated companies, commonly known as "Elara." ECF No. 11, PageId.304-305.

Ms. Deary remained a faithful employee of Elara up until 2017, when she was placed on "garden leave" for no reason other than her husband, who was then CEO, was forced to resign. (*Id*.)   Ms. Deary had not been previously advised of any performance issues, written up for improvement or any other negative review, and had no prior notice of being put on "garden leave." (*Id*.) Upon the abrupt termination of

2

her employment, she entered into a Settlement and General Release Agreement (the "Settlement Agreement"), effective April 18, 2017, that contained various restrictive covenants that were limited in scope. (*Id*.) For example, the Settlement Agreement contains limitations in the geographic scope of her non-competition agreement.  All those restrictions expired in April 2019. ECF No. 11, PageID.306.

Ms. Deary, at all times, attempted to carefully conduct business so as to honor the restrictive covenants contained in the Settlement Agreement. ECF No. 11, PageID.308.  Yet, Great Lakes has embarked on a strategy of harassment against Ms. Deary, several of her former co-workers and associates, and Careline, which is owned by her son in law.  (*Id*.) Ms. Deary originally filed this action to request a declaration from the Court to adjudicate her rights under the Settlement Agreement. She subsequently filed a First Amended Complaint ("FAC") to assert affirmative claims for relief, including for Tortious Interference and Unjust Enrichment. (*Id*.)

Ms. Deary's declaratory claim seeks a declaration that the terms of her Settlement Agreement expired in April 2019, she did not breach of those terms prior to their April 2019 expiration, and Great lakes does not have any valid claims against Ms. Deary for breaching the Settlement Agreement. *See* ECF No. 11, PageID.311-12. After Ms. Deary's Complaint was filed here asserting this declaratory claim, and rather than filing a counterclaim here, Great Lakes filed a separate later lawsuit in Jackson Count state court alleging that Ms. Deary breached the Settlement Agreement

3

while it was still effective and that the restrictive covenants therein should be extended past the April 2019 extension due to Ms. Deary's alleged breaches. (**Ex. 1** at ¶¶ 109-114). Great Lakes now requests dismissal, in part of Ms. Deary's declaratory claim on both abstention grounds and Rule 12(b)(6) grounds. These requests, as well as the other requests for dismissal in Great Lakes' Motion, should be denied.

## <u>ARGUMENT</u>

### I.   The *Brillhart* Abstention Doctrine Is Inapplicable To The FAC

Defendants claim that the *Brillhart* abstention doctrine precludes the Court from hearing this matter.  In *Brillhart*, the Supreme Court held that federal courts have discretion to decline to hear actions arising under the Declaratory Judgment Act. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). Roughly 25 years later, the Supreme Court reminded federal courts that they have a "virtually unflagging obligation" to exercise jurisdiction over actions seeking legal relief. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). *See also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-88 (1995).

When a lawsuit involves "mixed claims" and includes independent causes of action for money damages, as is the case here, the *Brillhart* principles do not apply.

### A.   Because the FAC includes additional coercive and non-declaratory claims, Brillhart is inapplicable, and this Court could only possibly abstain under Colorado River abstention doctrine

Because the FAC contains "mixed claims," the *Brillhart* abstention doctrine

should not be applied. "In cases such as this, involving 'mixed' claims of legal and declaratory relief, the circuits are split regarding the proper standard to employ. Some courts apply *Colorado River* to mixed claims, while others determine that if the legal claims are dependent on the declaratory claims, the court may decline jurisdiction over the entire action. The Sixth Circuit has not addressed this issue." *Comau, LLC v. Bayview Elec. Co., LLC*, No. 20-12865, 2021 WL 1037728, at *2 (E.D. Mich. Mar. 17, 2021) (citations and quotations omitted) (**Ex. 4**, All Unpublished Cases). *See Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 227-29 (3d Cir. 2017) (summarizing various Circuit Court approaches).

Plaintiff urges this Court to follow the Second, Fourth, and Fifth Circuits' bright line rule approach that holds that *whenever* coercive claims exist, only the *Colorado River* analysis can be applied. *See Id*. at 228. The *Colorado River* analysis as it relates to this case is addressed in Section II below.

However, if the Court decides to follow the other view in the circuit split, the *Colorado River* analysis would still apply here. The Third, Seventh, and Ninth Circuits follow an "independent claim test" in deciding whether *Brillhart* or *Colorado River* should apply to a case with mixed claims. *See Id*. at 228-229. "Under this test, the district court first determines whether claims seeking legal relief are independent of claims for declaratory relief." *Id*. at 228. Here, at a minimum, Plaintiff's tortious interference claim is completely independent of her declaratory claim. Whether

5

"Defendants' [defamatory] conduct ... caused third parties to disrupt or terminate their relationships with Plaintiff" thereby causing Plaintiff "financial damage and emotional distress" is not dependent whatsoever on a favorable declaratory ruling. *See* ECF No. 11, PageID.307, 310. Accordingly, under this other split view,[1] *Brillhart* would still not apply but instead only a *Colorado River* analysis.

Defendants' Motion refuses to even acknowledge the Second, Fourth, and Fifth Circuits' bright line rule approach and instead cursorily argues that "Deary's amendment to add nominally 'coercive' claims does not change things." ECF No. 15, PageID.361. Instead, Defendants focus on an inapposite opinion in *Everest Nat'l Ins. Co. v. USAA Cas. Ins. Co.*, No. 17-CV-13090, 2018 WL 500287, at *2 (E.D. Mich. Jan. 22, 2018) and several non-binding and out-of-jurisdiction cases. *Id*. In *Everest Nat'l Ins.*, the court applied the *Brillhart* doctrine to the operative complaint even though the plaintiff had amended and removed its claim for declaratory relief. *Id*. at *2. The court did so not by citing any applicable law on this issue as addressed above, but applied *Brillhart* because its "decision on the remaining claims require[d] the same analysis as the dismissed declaratory judgment claim." *Id*. Stated another way, the court found that the non-declaratory claims were dependent on the dismissed

---

[1] There appears to be one other approach in the split only followed by the Eight Circuit, called the "heart of the matter" test. *Rarick*, 852 F.3d at 228. Given the other six circuit courts that have weighed in on this issue have not applied this test, and it is the vast minority, an analysis of this test would unhelpful and unpersuasive.

declaratory request, so *Brillhart* was still applicable.

This approach is akin to the Third, Seventh, and Ninth Circuits' "independent claim test" discussed above. And, even following that approach here, as stated above, it is inapplicable to this case because, at a minimum, Plaintiff's tortious interference claim is completely independent of her declaratory claim. So, Defendants' reliance on *Everest* is inapplicable and misplaced. So too is Defendants' reliance on the other string cited cases in its Motion.[2]

Under no approach should this Court conduct a *Brillhart* abstention analysis, as the FAC contains coercive claims which are independent from the request for declaratory relief. "[W]hen an action involves coercive relief, the district court must apply the abstention standard set forth in *Colorado River*." *New England Ins. Co. v. Barnett*, 561 F.3d 392, 394–95 (5th Cir. 2009). And, even under a *Colorado River* abstention analysis, as discussed below, abstention is not warranted here.

## II.  Dismissal Of The FAC Is Likewise Not Warranted Under The *Colorado River* Abstention Doctrine

Defendants next request this Court ignore its "virtually unflagging obligation"

---

[2] Important to note is the fact that none of the cases relied upon by Defendants in ECF No. 15, PageID.361 are binding upon this court. They are also all distinguishable. *Everest National* is distinguishable because that case's claims all involved the same identical issue. That is not true here, especially given the distinctness of Plaintiff's tortious interference claim. *Trent* is distinguishable because the non-declaratory claims were found to be frivolous. And *Nationwide* is distinguishable because the non-declaratory claims were found to be based on an "impossibility."

to exercise jurisdiction over this case because of a narrow and "extraordinary" exception outlined in the *Colorado River* abstention doctrine. 424 U.S. at 817. The *Colorado River* doctrine can permit abstention based on "considerations of judicial economy and federal-state comity [that] may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). "Before the Colorado River doctrine can be applied, the district court must first determine that the concurrent state and federal actions are actually parallel." *Id.*

For purposes of this Motion, Plaintiff will agree that this case is "parallel" to the Jackson County state court action. Yet, that is of no consequence because, as outlined below, an analysis of the *Colorado River* factors evidences that the "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" is not warranted here. *Colorado River*, 424 U.S. at 813. The *Colorado River* factors were summarized in *Romine*: "In *Colorado River*, the Court declared that, in deciding whether to defer to the concurrent jurisdiction of a state court, a district court must consider:"

  (1)  whether the state court has assumed jurisdiction over any res or property;
  (2)  whether the federal forum is less convenient to the parties;
  (3)  avoidance of piecemeal litigation; []
  (4)  the order in which jurisdiction was obtained[;]
  (5)  whether the source of governing law is state or federal;
  (6)  the adequacy of the state court action to protect the federal plaintiff's rights;

8

(7)    the relative progress of the state and federal proceedings; and

(8)    the presence or absence of concurrent jurisdiction.

*Romine*, 160 F.3d at 340–41 (cleaned up). Note that "[t]hese factors, however, do not comprise a mechanical checklist." *Id*. at 341. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818-19. "*Only the clearest of justifications will warrant dismissal*." *Id*. (emphasis added).

## A.    <u>Factor 1</u>: the state court has not "assumed jurisdiction over any res or property"

Factor 1 does not favor abstention because, as Defendants admitted, "this case does not involve a *res* or property," so the state court has not "assumed jurisdiction over any res or property" ECF No. 15, PageID.368. When "no [res or] property is at issue; this factor thus weighs against abstention." *Romine*, 160 F.3d at 341; *see also Doe v. Ann Arbor Pub. Sch.*, No. 11-15657, 2012 WL 1110015, at *6 (E.D. Mich. Apr. 3, 2012) (**Ex. 4**, All Unpublished Cases). Although Defendants say this factor is "inapplicable," ECF No. 15 PageID.368, the fact that there is no "*res* or property" weights against abstention. *Id*.

## B.    <u>Factor 2</u>: the federal courthouse is not less convenient

Factor 2 does not favor abstention because the Detroit federal courthouse is more convenient, or at most just as convenient, than the Jackson state courthouse.

9

First, all counsel are all located closer to the Detroit federal courthouse as opposed to the Jackson state courthouse. *See Taylor v. Campanelli*, 29 F. Supp. 3d 972, 978 (E.D. Mich. 2014) (consider the parties' counsels' proximity to the two courthouses in analyzing this factor). Second, there is only an 80-mile difference between the two courthouses. To the extent any witnesses or parties are required to come to the federal courthouse, it would not be so inconvenient to favor abstention. *See Focus Radio, Inc. v. Summit Radio, Inc*., 853 F. Supp. 252, 256 (E.D. Mich. 1994) (citation and quotation omitted) ("distance of 200 miles between the state and federal forum was a fair distance, but not one sufficiently great so as to weigh in favor of abstention."). Third, it would be more inconvenient for the parties' Metro Detroit attorneys to frequently travel to Jackson County than it would be inconvenient for the parties to travel, on select occasions, the one hour to Detroit. This factor weighs against abstention.

### C.   Factor 3: there is no threat of piecemeal litigation and it is Defendants, not Plaintiff, who has engaged in gamesmanship

Factor 3 does not favor abstention because there is no threat of "piecemeal litigation." "Piecemeal litigation occurs when different courts adjudicate the identical issue." *Romine*, 160 F.3d at 341. Here, there is no threat of that occurring because Ms. Deary has filed a motion to dismiss the state court action under MCR 2.116(C)(6) because of the pendency of this first-filed lawsuit. That is, once the state court dismisses the Defendants' claims in that action due to the pendency of this action, there will be no risk of "different court adjudicate[ing] [an] identical issue." *Id*.

10

At a minimum, the state court will stay Defendants' claims against Ms. Deary in the state court action because this case was filed first. A stay on those claims would likewise eliminate any concern for duplicate determinations of the same issues and eliminate any potential threat of "piecemeal litigation." Under MCR 2.116(C)(6), the state court could stay, instead of dismiss, the claims against Ms. Deary in that case. *Fast Air, Inc. v. Knight*, 235 Mich. App. 541, 549 (1999).

At most, there may be some related litigation in state court. However, related, parallel, or even duplicative litigation is not sufficient to warrant abstention – it *must* be "piecemeal." "Concurrent parallel actions alone do not present the danger of piecemeal litigation needed in order to grant abstention." *Focus Radio, Inc. v. Summit Radio, Inc.*, 853 F. Supp. at 256. "The prevention of duplicative litigation is not a factor to be considered in a state-versus-federal court abstention determination." *CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052, 1061 (E.D. Mich. 2011) (quotations and citation omitted).

Defendants fail to even allege in their Motion that there is a risk of any "piecemeal litigation." Instead they improperly argue this lawsuit is about Ms. Deary's "gamesmanship" and "forum shopping." ECF No. 15, PageID.364. However, if any party should be accused of "gamesmanship" or "forum shopping," it is Defendants.

There is a prior 2019 version of this lawsuit that was pending *in this Court* in which Great Lakes alleged in its First Amended Complaint that Plaintiff Deary

11

breached her settlement and non-compete agreement "by participating in the formation and subsequent operation of Careline Health Group-MI, LLC." (**Ex. 2**, 2019 Case FAC at ¶ 8). This Court dismissed that case in an October 4, 2019 Opinion and provided that "Great Lakes can re-file if it gathers the facts necessary to state a claim upon which relief can be granted." (**Ex. 3**, 10/4/19 2019 Case Opinion and Order). Despite the Court inviting Defendant to re-file its case here, it instead chose to file in state court.

Defendants insincerely argue that it filed the new case and claims against Plaintiff Deary in state court because it felt the need to add Careline and that "the only forum available to do so [is state court] given that Careline and [Great Lakes] are Michigan residents." ECF No. 15, PageID.365. It is Defendants who have engaged in gamesmanship and forum shopping. The only reason Defendants added Careline as defendants to the state court action was to defeat diversity.

This is proven by the fact that when Defendants' case was here in 2019, and despite making extensive allegations regarding Careline, it never tried to add those entities as defendants in that action. (*See* **Ex. 2**, 2019 Case FAC at ¶¶ 8-21). Great Lakes could have made claims against Careline and Ms. Deary as co-defendants in the 2019 lawsuit but they did not. Great Lakes did not need Careline for its case in 2019 against Ms. Deary and it does not need Carline for its case now, except, of

12

course, to defeat diversity jurisdiction.[3] In any event, Great Lakes' claims against Careline are separate and independent of the claims against Deary, and Great Lakes has not argued that Careline is a necessary and indispensable party- because it is not.

### D. <u>Factors 4 and 7</u>: the Federal Court obtained jurisdiction first and the state court case has not progressed at all since filing

Factors 4 and 7 do not favor abstention because the Federal Court obtained jurisdiction over this matter first and no progress has been made in the state court case. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983) (factor 4 is mostly concerned with the factor 7 issue; "how much progress has been made in the two actions").[4] Nothing has occurred in the state court case other than Ms. Deary filing a motion to dismiss and the other Defendants an answer. "The fact that the federal claim was filed first, combined with the lack of substantial progress in the state action, weighs in favor of this Court's continued exercise of jurisdiction." *Focus Radio*, 853 F. Supp. at 257. These factors weigh against abstention.[5]

---

[3] Further, Defendants' state court case complaint even acknowledges the 2019 federal action that was pending in this court is a prior related action pursuant to MCR 1.109(D)(2)(a)(ii). (**Ex. 1**, State Court Complaint at caption).

[4] *See CLT Logistics*, 777 F. Supp. 2d at 1061 ("the first-to-file factor is largely subsumed in the relative progress factor.").

[5] *See PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 208 (6th Cir. 2001) ("The seventh factor, however, once again points toward exercising federal jurisdiction, because the state court action has not progressed to any significant degree.").

## E. <u>Factors 5, 6, and 8</u>: the remaining factors also disfavor abstention or, at best, marginally favor abstention

Factor 5 does not favor abstention because the "source" of governing law here is *both* state and federal. Plaintiff's FAC states a federal claim under the Federal Declaratory Judgment Act, 28 U.S.C. 2201, as well as claims under Michigan state law for tortious interference and unjust enrichment. *See* ECF No. 11, PageID.309-11. "[T]he presence of federal-law issues must always be a major consideration weighing against surrender." *Moses*, 460 U.S. at 26. Moreover, in this diversity case, Ms. Deary has a right to be in Federal Court. Relatedly, factor 8 does not favor abstention because there is no concurrent jurisdiction with the state court. The state court could not hear Plaintiff's claim under the Federal Declaratory Judgment Act. However, the state court could hear this claim under MCR 2.605. Even so, assuming there would be concurrent jurisdiction, its presence "only marginally, if at all, favors abstention." *PaineWebber, Inc. v. Cohen*, 276 F.3d at 208.[6]

## F. The *Colorado River* factors and law do not support abstention

Only the most exceptional circumstances warrant disturbing the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. Those exceptional circumstances do not exist here. The factors addressed above overwhelmingly weigh against abstention and, if they

---

[6] Plaintiff does not dispute that, under factor 6, the state court would be able to adequately protect Plaintiff's rights.

favor it at all, only marginally. Moreover, this Court must be mindful that the balance of these factors is, "heavily weighted in favor of the exercise of jurisdiction." *Moses*, 460 U.S. at 16; *see also id*. at 25–26 ("[W]e emphasize that our task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction[;] ... rather, the task is to ascertain whether there exist 'exceptional' circumstances ... justify[ing] the surrender of that jurisdiction."). This Court should not abstain under *Colorado River*.

## III.   Plaintiff States Viable State Law Claims Under Rule 12(b)(6)

### A.   Standard of review

A court accepts as true the factual allegations in a plaintiff's pleading when deciding a Fed. R. Civ. P. 12(b)(6) motion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Such a motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

### B.     Defendants distort the premise of plaintiff's FAC

Defendants' Motion is based upon a deliberate misstatement as to the premise of Plaintiff's Complaint and, therefore, Defendants' reliance on *Early Detection Ctr., P.C. v. New York Life Ins. Co.,* 157 Mich. App. 618 (1986), is misplaced. ECF No. 15, PageID.369-373. While Plaintiff does raise the harassing nature of Defendants' various lawsuits and the monetary lost associated therewith in her FAC, that litigation is not the sole basis for Plaintiff's claims.[7] Rather, Plaintiff also specifically raised that Defendants engaged in wrongful conduct outside of litigation. *See* ECF No. 11, PageID.307, at ¶ 22.[8]

Plaintiff does not dispute that Defendants have accurately set forth the holding in *Early Detention*. However, this holding is irrelevant because Defendants deliberately misconstrue the nature of Plaintiff's claims – the wrongful act underlying the tortious interference and unjust enrichment counts. There is nothing in Paragraph 22 that suggests or limits these "disparaging comments" to the prosecuting of the

---

[7] Defendants claim that Plaintiff falsely state that they "have not prevailed" in their lawsuits against former associates. ECF No. 15, PageID 371 and at FN 2. However, FN 2 establishes that – beside one settlement – all of Defendants' lawsuits remain pending and, in fact, Defendants have **not** prevailed.

[8] "Defendants have made disparaging comments about Ms. Deary and her family members to associates and former co-workers, including that Ms. Deary and her family somehow wrongfully profited off the backs of long-time employees and they were trying to do it again; that they were 'pirating' business away from Defendants; and this also included threatens made to many of its employees (who were long time employees and/or friends of Ms. Deary) that if they speak with Ms. Deary, they will be summarily fired." *Id.*

16

pending litigation, as wrongfully claimed by Defendants. *See* ECF No. 15, PageID.374.[9]  Rather, there is no mention of litigation in Paragraph 22. And Paragraph 22 specifically states that the comments were made to "associates and former co-workers." Notably, there would be no reason for Defendants to say in the underlying litigation that Plaintiff and her family "somehow wrongfully profited off the backs of long-time employees and they were trying to do it again."[10] ECF No. 11, PageID.307, at ¶ 22. Notably, Defendants do not deny saying them, but rather falsely maintain that they were "statements made during the legal proceedings themselves." ECF No. 15, PageID.374.

These statements are not privileged, and it is Defendants' burden of proving the existence of any alleged privilege.  *See* 50 Am. Jur. 2d Libel and Slander § 257 ("[P]rivilege is a defense to a defamation action, and the burden is on the defendant to plead and prove that the challenged publication was made under circumstances that conferred privilege.") (footnotes and citations omitted)  *See also*, 15 Mich. Civ. Jur.

---

[9] For these very same reasons, Defendants' reliance on *Young v. Motor City Apartment Ltd. Dividend House. Ass'n No. 1 & 2,* 133 Mich. App. 671 (1984), is also misplaced. Furthermore, Plaintiff has not pled an abuse of process or malicious prosecution claims which were at issue in *Young.*

[10] Even if the defamation claim was limited to statements made in litigation (which it is not), the "absolute" privilege is not absolute. Rather, the defamatory statements must be relevant to the proceedings in order to come within the absolute privilege. *See Osterle v. Wallace*, 272 Mich. App. 260, 264 (2006) ("Statements made by judges, attorneys, and witnesses during the course of judicial proceedings are absolutely privileged if they are *relevant, material, or pertinent* to the issue being tried.") (Emphasis added.)

Libel and Slander § 50 ("The burden of proof with regard to whether qualified governmental immunity is applicable to a defendant in a defamation action is with the defendant.") Thus, it is improper to suggest that Plaintiff must plead avoidance of any such privilege in her Complaint.

### C.   Plaintiff states valid claims for tortious interference and unjust enrichment unrelated to litigation

Defendants intentionally interfered with Plaintiff's business expectancy by bad-mouthing Plaintiff to her associates and colleagues. ECF No. 11, PageID.307, ¶ 22. These allegations have absolutely nothing to do with statements made in connection with litigation. They were outside the context of litigation and intended to dissuade Plaintiff's business associates from conducting business with her. Notably, Paragraph 22 quotes a specific statement Defendants was used to "message" statements about Plaintiff to these associates.  This wrongful conduct supports an allegation of tortious interference, unrelated to Defendants' successive and multiple litigation.

### 1.    Plaintiff states a proper claim for tortious interference

The underlying wrongful act for Plaintiff's Claim for Tortious Interference is the disparaging remarks outlined in Paragraph 22, made to dissuade Plaintiff's business associates from conducting legitimate business with her. Among those statements, Defendants conveyed that Plaintiff had somehow taken advantage of her relationships by "*profiting the backs of long-time employees*" and that she was "*trying to do it again,*" and that she was somehow engaged in illegal activity by "*pirating*"

*business from Defendants. See* ECF No. 11, PageID.307, at ¶ 22. These statements are clearly wrongful and support a claim for tortious interference.

Defendants claim they are entitled to rely on the same defenses and immunities for their tortious conduct as they would be as if the claims were pleaded as ones based on defamation. But that misses the point. There is no privilege here because these statements were not made in connection with any litigation – they were made in the business realm and intended to dissuade associates from conducting business with Plaintiff.

Plaintiff has asserted a claim for tortious interference – not for defamation, and she has adequately pled the factual predicate for her claim.  Defendants rely on *Dhooghe v. McLaren Health Servs.,* No. 09-12630, 2010 WL 3037813, at *6 (E.D. Mich. July 12, 2010), to support their argument that Plaintiff have failed to sufficiently plead the facts to support her claim. ECF No. 15, PageID.375. However, *Dhooghe* involved a claim for defamation and the court there merely stated that: "The Complaint does not state the identity of the individual who defamed Plaintiff or the recipient of the information. Plaintiff's failure to plead this allegation with specificity would by itself be fatal to the claim." Even assuming that *Dhooghe* is binding and applies, Plaintiff's Complaint, especially in paragraph 22, alleges the very facts that Defendants now wrongfully claim are missing: (1) "what the statements were" (i.e., "that Ms. Deary and her family somehow *wrongfully profited off the backs of long-*

19

time employees and they were trying to do it again" and that they were "*pirating*" *business away from Defendants*"), (2) "when they were said" (i.e., after her termination based on the added allegation that threats were made to employees not to speak to Plaintiff); (3) "why they were false" (i.e., that Plaintiff has complied with her non-compete obligations (¶¶ 19 and 32) and Plaintiff does not own, operate or control Careline (¶ 45)); (4) "the identity of the speaker" (i.e, "*Defendants have made* …" (¶ 22)); and (5) "the recipient of the information" (i.e., "*to associates and former co-workers*") (¶ 22)). Therefore, Plaintiff has alleged a prima facie claim of defamation.

### a.    Plaintiff has properly plead a tortious interference claim

The elements of tortious interference with a business relationship or expectancy are "the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff." *Dalley v. Dykema Gossett PLLC,* 287 Mich. App. 296, 323 (2010) (citation and quotations omitted). Here, Plaintiff has plead all the required elements for a tortious interference claim. *See e.g.,* ECF No. 11, PageID.309-310, at ¶¶ 31-38.

First, Plaintiff does identify the business for which she had a valid business relationship or expectancy. *See* ECF No. 11, PageID.309-310, at ¶ 29: "Several businesses in which she invested will no longer offer her opportunities in which to

invest due to Defendants' conduct; ¶ 32: "Plaintiff had a business relationship with one or more private equity firms that were in the process of acquiring hospice providers."; ¶ 33: "Plaintiff also had a relationship with former colleagues and employees at Great Lakes Caring." Despite Defendants' claim to the contrary, Plaintiff also alleges that Defendants knew of these relationships. *See* ECF No. 11, PageID.309-310, at ¶ 34: "Defendants were aware that Plaintiff continued to engage in such lawful business, including with the private equity firms and with former colleagues and employees." And, Plaintiff does plead the nature of Defendants' interference with these relationships outside of the litigation. *See* ECF No. 11, PageID.309-310, at ¶ 22: "Defendants have made disparaging comments about Ms. Deary … to associates and former co-workers … and this included threat[s] made to many of its employees … that if they speak to Ms. Deary, they will be summarily fired.". Here, Plaintiff has not only alleged Defendants' wrongful and illegal acts – including defamation – but that Defendants acted with malice as evidenced by the threats made against its employees that had contact with Plaintiff.  Plaintiff has properly plead a claim for tortious interference.

### 2.    Plaintiff states a claim for unjust enrichment

Unjust enrichment requires that a plaintiff establish "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Lanstar Exp Am v. Nexteer Auto*

*Corp.*, 319 Mich. App. 192, 205 (2017). "[T]he law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense." *Karaus v. Bank of NY Mellon*, 300 Mich. App. 9, 23 (2013)

Here, Defendants make two primary arguments claiming that Plaintiff's claim for unjust enrichment is allegedly without merit. ECF No. 15, PageID.376-378. First, Defendants claim that Plaintiff did not provide a direct benefit to them and, as a result, there is nothing to be returned to her. Obviously, the benefit they received is Plaintiff not competing with them, even though she had the legal right to do so. This is the underlying consideration for the non-compete agreement that Defendants seeks to enforce. If Plaintiff's forgoing of competition is of no direct benefit to Defendants, then why are Defendants suing Plaintiff to preclude her lawful competition and what damages have they allegedly sustained because of this competition? Second, citing to *Belle Isle*, Defendants suggest that Plaintiff's unjust enrichment claim is barred by an express contract covering this same subject matter. However, as Plaintiff's Settlement Agreement expired by its very terms as of April 2019 – more than two and ½ years ago – it does not bar unjust enrichment claims arising *after* the termination of the Settlement Agreement. *See Keywell and Rosenfeld v. Bithell,* 254 Mich. App. 300, 329 (2002)(the plaintiff "could have recovered for breach of contract for the period when the contract was in force and could have recovered *on an implied contract [unjust enrichment] basis for the period when there was no contract in force*.")

(emphasis added) (citation and quotations omitted).  Defendants have not established that their defamation of Plaintiff occurred during the term of the Settlement Agreement so as to bar Plaintiff's unjust enrichment claim.

## IV.   This Court Should Not Dismiss the Declaratory Judgment Count

Like Defendants' other arguments, there is also no merit to Defendants' argument that this Court should dismiss Plaintiff's count seeking declaratory relief.

First, as discussed above in Sections I and II, this Court should only abstain from resolving declaratory judgment cases under exceptionable circumstances that are not present here.  Notably, Defendants cite to no controlling Sixth Circuit precedent in support of their claim that different abstention doctrines should be applied to the separate claims in this case.[11]  For all the reasons stated in Sections I and II above, this

---

[11] The district court cases cited in Defendants' footnote 3 are not legally controlling. More importantly, they are also factually and legally distinguishable. In *Ratte*, the court found that the declaratory judgment count failed due to lack of standing.  While briefly mentioned, there was no discussion of the *Brillhart/Amsouth Bank* factors.  In *Northland Center Michigan*, the court discussed the *Brillhart/Amsouth Bank* factors. Notably, the court held that "the state court system, where the original receivership action began, is a better forum." and "that the best remedy for this controversy is monetary damages, not declaratory relief." *Northland Center Michigan LLC v. City of Southfield,* 2017 WL 1544102, at *4 (E.D. Mich. Apr. 28, 2017). Here, there was no pending state court case when Plaintiff's Complaint was filed as the original case had previously proceeded in federal court and declaratory relief is a viable remedy. In *Orleans*, the court was dealing with a "mirror-image" counterclaim, which is not applicable here, as Defendants have no pending claims in this Court against Plaintiff. Thus, the district court only addressed one factor of the *Brillhart/Amsouth Bank* factors – whether the declaratory judgment action serves a useful purpose.  Finally, *Kreinberger*, actually supports Plaintiff, as the district court refused to dismiss a mirror image counterclaim for declaratory relief related to prospective obligations,

Court should not dismiss Plaintiff's declaratory judgment count.

Second, there is no merit to Defendants' claim that Plaintiff has failed to properly allege her declaratory judgment count under the *Twombly/Iqbal* standard. ECF No. 15, PageID.379-380. Notably, Defendants ignore all the factual allegations set forth in the FAC, *see e.g.,* ECF No. 11, PageID.311, at ¶ 45, and, instead, focus only on the allegation that Plaintiff "attempted to carefully conduct business so as to honor the restrictive covenants…." ECF No. 15, PageID.380. Of course, Plaintiff cannot prove the negative – that she complied with the Agreement – and, therefore, this allegation is stated broadly. However, Plaintiff does specifically address the false claims made against her in Paragraph 45 of the FAC.

Finally, Defendants' request this Court dismiss the declaratory claim because it allegedly "serves no purpose in light of the ongoing-state-court suit." ECF No. 15, PageID.380. However, as Plaintiff has a pending motion to dismiss the state court proceedings, there is no basis to assume these state proceedings will go forward. Notably, it is Defendants that wishes to have things both ways. ECF No. 15, PageID.381. Here, Defendants argue that the claims are identical to support dismissal, while they argue in the state court that they are not the same as the basis for denying Plaintiff's motion to dismiss. (Compare, ECF No. 15, PageID.381 with Great Lakes state court motion to dismiss response at p. 6 ("A second reason why Deary's MCR

which obligations are also at issue here.

2.116(C)(6) motion fails is that this lawsuit does not involve 'the same parties and the same claim' as Deary's federal lawsuit.")).

## **CONCLUSION**

WHEREFORE, for all of the above reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss be denied and Plaintiff granted any other relief that is necessary and just.

Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**

*/s/Marc L. Newman*
Marc L. Newman (P51393)
Eric J. Minch (P80926)
950 West University Drive
Rochester, MI 48307
(248) 841-2200
mln@miller.law
ejm@miller.law
*Attorneys for Plaintiff*

Dated: September 13, 2021

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 13, 2021, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**

*/s/Marc L. Newman*
Marc L. Newman (P51393)
950 West University Drive
Rochester, MI 48307
(248) 841-2200
mln@miller.law