UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CHERI LYN DEARY,<br><br>      Plaintiff,<br><br>v.<br><br>GREAT LAKES ACQUISITION CORP. d/b/a GREAT LAKES CARING and GREAT LAKES HOME HEALTH SERVICES INC.,<br><br>      Defendants. | Case No. 21-11587<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [15] AND STAYING PROCEEDINGS**

Cheri Lyn Deary founded Great Lakes Home Health Services in 1994. In 2014, she sold her stake in the company to Great Lakes Acquisition Corporation, which now goes by Elara Caring. Deary continued to work for Elara until April 2017, when she signed a settlement agreement with the company that imposed various restrictive covenants on her for the next two years.

That settlement agreement has been at the heart of several lawsuits between Elara and Deary in the years since. In short, Elara claims that Deary worked for a company, Careline Health Group, that directly competes with Elara within the prohibited geographic area and timeframe, and that she poached Elara employees on behalf of Careline.

Most recently, Elara sued Careline, two of Deary's former co-workers, and others in state court. Elara says discovery revealed direct evidence of Deary's breaches of the settlement agreement, and so it moved to add her to that case.

Two days before a hearing on Elara's motion to add Deary as a defendant in state court, Deary turned the tables and filed this action in federal court against Elara. Deary's one-count complaint seeks a declaratory judgment that, among other things, Elara has no valid claims against her in the state court action. That same day, Deary filed a motion in state court opposing Elara's efforts to add her as a defendant, relying in part on the newly filed federal court action. The state court declined to add Deary but indicated its willingness to consolidate the cases should Elara file a new case against her.

In response to Deary's federal complaint, Elara filed a motion to dismiss asking this Court to abstain from exercising its jurisdiction or to dismiss for failure to state a claim. Deary then amended her complaint to add claims for tortious interference and unjust enrichment. Elara again asked the court to dismiss the case for the same reasons.

For the reasons given below, the Court GRANTS IN PART Elara's motion.

**I.**

Deary and her husband founded Great Lakes Home Health Services in 1994. (ECF No. 11, PageID.304.) Over the following two decades, the company "grew into a national home health care network with over 2,600 employees." (*Id.*) In 2014, Deary sold her stock in the company to Great Lakes Acquisition Corporation, which now

goes by the tradename of Elara Caring. (*Id.* at PageID.304–305.) She remained Elara's employee until April 2017. (*Id.* at PageID.305.) At that time, Deary and Elara executed a settlement agreement that imposed various non-competition and non-solicitation covenants on Deary. (*Id.*)

In 2018, and before the non-compete had expired, Deary's son-in-law founded Careline Health Group and allegedly listed Deary as its registered agent in the state of Michigan. (*Id.* at PageID.306–307; ECF No. 9, PageID.33.) Elara believes that Deary's association with Careline—and her alleged efforts to recruit Elara employees to Careline—violated the settlement agreement. (ECF No. 9, PageID.33.)

Since at least 2019, Elara, Careline, Deary, and former Elara employees that Deary allegedly poached have been litigating in both state and federal courts. In fact, this Court dismissed a suit between Elara and Deary in October of 2019. (Notably, Elara filed the case in state court and Deary removed it to federal court.) *See Great Lakes Acquisition Corp. v. Deary,* No. 19-11502, 2019 WL 4919148, at *3 (E.D. Mich. Oct. 4, 2019) ("The case is dismissed WITHOUT PREJUDICE, and Great Lakes can re-file if it gathers the necessary facts to state a claim upon which relief can be granted.").

Most recently, Elara sued former Elara employees, Carolyn Ewing and Kasey Stump, Careline, and others in Jackson County Circuit Court for breaching their own restrictive covenants, tortious interference, unjust enrichment, and civil conspiracy. (ECF No. 11, PageID.308; ECF No. 9-3, PageID.109); *see also Great Lakes Home Health Servs. v. Ewing*, No. 2020-888-CB (Mich. 4th Cir. 2020). The basic theory of

3

*Ewing* is similar to Elara's dispute with Deary: Stump and Ewing worked for Elara until Deary allegedly recruited them to Careline in violation of their restrictive covenants. (ECF No. 9, PageID.34.) During discovery, Elara claims to have uncovered "direct, irrefutable evidence" that Deary violated the terms of her settlement agreement. (ECF No. 15, PageID.358, 371 n.2.) So it moved to add her as a defendant in the *Ewing* suit. (*Id.* at PageID.358.)

Two days before the hearing on Elara's motion, Deary filed this federal lawsuit. (ECF No. 9, PageID.24; ECF. No. 1.) She sought only a declaratory judgment that, among other things, Deary "has not breached any of the terms of her April 2017 Settlement Agreement" and that Elara "do[es] not have valid claims against her, including the claims they are threatening to bring in State court." (ECF No. 1, PageID.7.) That same day, Deary filed a brief in *Ewing* arguing that adding her to that action would be futile because the pending federal case would require its immediate dismissal under Michigan's procedural rules. (ECF No. 9, PageID.36.)

The state court ultimately did not permit Elara to add Deary to *Ewing* because it did not want to prejudice Stump and Ewing with further delay. (ECF No. 15, PageID.358; ECF No. 9-9, PageID.200.) But it indicated that if Elara filed a new state court case against Deary, it would be "very receptive" to joining that case with *Ewing* because "the other defendants [including Careline], they're gonna get dragged through it anyway, and better to get it all resolved at once than in two separate cases." (ECF No. 15, PageID.358; ECF No. 9-9, PageID.200–201.)

4

Taking the hint, Elara then filed a new state case against Deary and Careline, asserting claims for breach of contract against Deary and tortious interference with Stump and Ewing's noncompete agreements, among other claims. (ECF No. 15, PageID.358; ECF No. 9-2, PageID.72–76.) The state court has since stayed that proceeding pending this Court's resolution of Elara's motion to abstain. (ECF No. 19-1, PageID.562.)

Elara asked this Court to either abstain under *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942), or to dismiss for failure to state a claim. Under *Brillhart*, federal courts have discretion to abstain from issuing declaratory relief where there is a parallel state court action. Deary then amended her complaint to add claims for tortious interference and unjust enrichment. Elara again asks the court to abstain under *Brillhart* or to dismiss for failure to state a claim, but for good measure now argues that abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), is also proper. Under *Colorado River*, federal courts may abstain from issuing legal relief in "extraordinary" circumstances where there is a parallel state court action. Given the clear briefing and record, the Court considers the motion without further argument. *See* E.D. Mich. LR 7.1(f).

Because the Court agrees that the relevant factors weigh heavily in favor of *Colorado River* abstention here, it GRANTS Elara's motion in part and stays the proceedings.

II.

The Court first considers whether it should abstain from jurisdiction in favor of the state court action. To do so, it must determine which theory of abstention—*Brillhart* or *Colorado River*—should apply.

A.

The question of which abstention doctrine applies becomes complicated when, as here, there are "mixed" claims for both declaratory and legal relief.

If Deary had maintained only a declaratory judgment action, *Brillhart* abstention would likely apply. Under *Brillhart*, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act[.]" *AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004). The court's decision to abstain depends on a "circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* This concern for overreaching federal judicial power is particularly acute when there is a pending state court action, because "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart*, 316 U.S. at 495.

But because Deary's amended complaint seeks legal relief on substantive claims in addition to declaratory relief, *Colorado River* abstention could potentially apply. Under *Colorado River* abstention, courts are instructed that, generally, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding . . . are . . . limited." *Colorado River*, 424 U.S. at 817.

Indeed, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813. However, in "extraordinary and narrow" cases, "considerations of judicial economy and federal-state comity may justify abstention[.]" *See id*; *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998).

So Deary's "mixed" complaint leaves the Court in the middle of two seemingly contradictory directives: to decline jurisdiction over a declaratory claim that would interfere with pending state court actions, *see Brillhart*, 316 U.S. at 495, but to exercise jurisdiction over legal claims where there is a pending state court action except in "extraordinary and narrow" circumstances, *see Colorado River*, 424 U.S. at 817.

A circuit split has developed regarding the proper standard to apply to these "mixed claims" cases. *See, e.g., Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223 (3d Cir. 2017) (summarizing various Circuit Court approaches). Some courts apply *Colorado River* to all mixed complaints, while others determine if the legal claims are "dependent" on the declaratory claim and, if so, they decline jurisdiction over the whole action under *Brillhart*. *See id.* (also noting that one circuit has developed a "heart of the matter" test not relevant here). But the Sixth Circuit has not addressed this question. *See Comau, LLC v. Bayview Elec. Co., LLC*, No. 20-12865, 2021 WL 1037728, at *2 (E.D. Mich. Mar. 17, 2021).

Fortunately, this Court need not wade into the debate, as Deary's claims meet even the high standard set by *Colorado River*.

**B.**

To reiterate, in *Colorado River*, the Supreme Court noted that, despite the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," 424 U.S. at 817, considerations of judicial economy and federal-state comity may justify abstention in situations involving the simultaneous exercise of jurisdiction by state and federal courts. *See Romine*, 160 F.3d at 339. As the Supreme Court explained, the principles underlying this doctrine "rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)). But, as the Court emphasizes, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813.

There is a two-step process to determine whether abstention is warranted under *Colorado River*. *Romine*, 160 F.3d at 339. The Court must first determine whether the state and federal proceedings are "parallel." *Id.* If they are, then the Court must use a balancing test to make the final abstention determination. *Id.*

At step one, Deary "agree[s] that this case is 'parallel' to the . . . state court action" for purposes of this motion. (ECF No. 17, PageID.443.)

So the parties only disagree at step two. The Sixth Circuit has identified eight factors relevant to step two of *Colorado River* abstention:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the

state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and, (8) the presence or absence of concurrent jurisdiction.

*PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001). But the Supreme Court has advised that "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). And again, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Id.*

The first factor—whether the state court has assumed jurisdiction over any res or property—does not support abstention. As Deary correctly points out, the absence of res or property "weighs against abstention." *See Romine*, 160 F.3d at 341.

The second factor—the convenience of the federal forum—also weighs slightly against abstention. (ECF No. 15, PageID.368–369; ECF No. 17, PageID.445.) This factor relates only to "geographical considerations," and the Jackson County courthouse is only 80 miles from the federal courthouse in Detroit. *See PaineWebber*, 276 F.3d at 207. *Compare Colorado River*, 424 U.S. at 820 (concluding that the 300-mile distance between the District Court and the state court is a factor supporting abstention), *with Romine*, 160 F.3d at 341 (concluding that two courthouses in Columbus, Ohio were equally convenient, which "counsels against abstention").

Here, Deary has a residence in Jackson County and both Elara and Careline are headquartered there, but the lawyers for both parties are Detroit-based. (ECF No. 17, PageID.445.) *See Taylor v. Campanelli*, 29 F. Supp. 3d 972, 978 (E.D. Mich. 2014) (considering the proximity of the parties' counsel to the two courthouses under

9

this factor). So it cannot be said that either courthouse is much more convenient than the other. However, because the federal forum is not *more* convenient than the state forum, this factor weighs slightly against abstention.

Although the first two factors counsel against abstention, each of the remaining six factors is either neutral or weighs in favor of abstention.

The third factor—the avoidance of piecemeal litigation—is "paramount" and points toward abstention. *See Moses H. Cone*, 460 U.S. at 19. Piecemeal litigation occurs where "different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Preferred Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388, 395 (6th Cir. 2017) (quoting *Romine*, 160 F.3d at 341). The desire to avoid piecemeal litigation not only implicates judicial economy but also the "legitimacy of the court system in the eyes of the public and fairness to the individual litigants," which are "endangered by duplicative suits that are the product of game[s]manship or that result in conflicting adjudications." *Romine*, 160 F.3d at 341.

Deary suggests that there is no risk of piecemeal litigation because the state court action against her would necessarily be dismissed or stayed under Michigan's procedural rules, and in fact, has since been stayed pending resolution of this motion. (ECF No. 17, PageID.445–446; ECF. No. 19.) Thus, she continues, any remaining litigation in state court would be "related" or "duplicative," but not "piecemeal." (ECF No. 17, PageID.446.)

10

But Deary does not adequately consider the nature of the suits here. Specifically, she asks for declaratory relief that Elara "do[es] not have valid claims against her," including those pending in state court. That would necessarily require this Court to litigate all of Elara's claims against her while those same claims are litigated in state court against Careline.

As an initial matter, such an outcome would make this case more than just "duplicative," as Deary suggests. Instead, it would be piecemeal because "the federal court would duplicate state-court efforts yet resolve only a 'piece' of a larger dispute." *See CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052, 1061 (E.D. Mich. 2011). Indeed, this Court can resolve only a "piece" of the larger dispute because Elara and Careline are not diverse. Rather, this is "the classic case of piecemeal litigation . . . [because] the state court suit is more comprehensive than the federal suit," and can potentially reach all claims and parties. *See id.* As Defendants explain in a related argument, "Regardless of what happens to the claims against Deary in state court, Elara's claims against the co-defendant Careline entities will proceed in state court. Requiring Elara to put on essentially the same case, for the same joint misconduct, with the same witnesses (including Deary herself), but in two different courts is the very essence of piecemeal litigation." (ECF No. 18, PageID.551.)

This is a "classic case of piecemeal litigation" for a second reason: "[i]f both actions were permitted to go forward, two courts would be adjudicating the same legal issue." *See Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390, 396 (6th Cir. 2019). More specifically, both courts would have to resolve, at minimum, whether

11

Deary's solicitation of Elara's employees on behalf of Careline amounts to tortious interference, unjust enrichment, or civil conspiracy. And both the state and federal courts would have to interpret the terms of similar non-compete and non-solicitation agreements controlling Deary, Stump, and Ewing. (ECF No. 9-2, PageID.62–63.) So the continuation of both cases could result in differing interpretations of those terms, differing resolution of the disputed facts regarding Deary's behavior as Careline's agent, and wholly inconsistent judgments. Such an outcome would constitute a waste of judicial resources and would undermine the credibility of the judicial system in the eyes of the public. So this factor weighs heavily in favor of abstention.

The fourth factor—the order in which jurisdiction was obtained—also weighs in favor of abstention. Deary claims that "the Federal Court obtained jurisdiction over this matter first and no progress has been made in the state court case." (ECF No. 17, PageID.448.) But this conclusion requires the Court to ignore entirely the existence of the *Ewing* state court action.

The Supreme Court has already rejected such a "mechanical reading" of this factor and instead requires its application "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone*, 460 U.S. at 22. A pragmatic view of the cases here requires consideration of *Ewing* for three reasons. First, Deary has been intimately involved in that case. She has already been deposed and produced documents there, and she will apparently be deposed again. (ECF No. 15, PageID.368.) Second, the timing of Deary's filing here suggests a connection between that case and this one. A hearing on the motion to add Deary as a defendant in *Ewing*

12

was scheduled for July 9, 2021. (ECF No. 9, PageID.24.) Two days before that hearing, on July 7, Deary filed this action in federal court. (*See id.*; ECF No. 1.) But she already knew that Elara had filed the motion to add her before she filed the federal claim. And because Elara hoped to add Deary as a defendant in *Ewing*, it would not have made sense for it to file a new case against her until after that motion had been disposed of. Finally, the state court judge's willingness to consolidate *Ewing* and the state case against Deary further confirms the relatedness of those actions.

So *Ewing*—as opposed to Elara's (not-yet-consolidated) state suit against Deary—is the proper measure of the state court's progress. *Ewing* was filed sometime before September 2020 and is far into discovery. (ECF No. 9-3, PageID.125.) This case was filed in July 2021 and is only at the pleading stage. *See Upward Mobility, Inc.*, 784 F. App'x at 396 (finding that a six-month delay between the filing of the state and federal actions weighed in favor of abstention). So the state court action has progressed well beyond the federal action. This factor, too, weighs in favor of abstention.

The fifth factor—the source of governing law—does not clearly favor or disfavor abstention. Deary rightly points out that there is a federal claim under the Federal Declaratory Judgment Act as well as state-law claims for unjust enrichment and tortious interference. And she is correct that "the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone*, 460 U.S. at 26.

13

However, the analysis is complicated when, as here, the source of law is federal, but where federal law requires the application of state law. For example, in *Preferred Care of Delaware*, the Sixth Circuit held that this factor "does not clearly favor or disfavor abstention" where the source of law was the Federal Arbitration Act, but enforceability of the arbitration agreement depended on the state law of contract formation, thus "placing state law at least as much at issue as federal law." 676 F. App'x at 396. The court concluded that, "[a]s a result, neither state nor federal law clearly predominates in this case. With the sources of the relevant law necessarily being mixed, then, this factor neither favors nor disfavors abstention." *Id*. Likewise, here, the Federal Declaratory Judgment Act is really just a vehicle for Deary's state law claims. The Act allows this court to grant declaratory relief, but to grant that relief, this Court would adjudicate only state law claims. And Elara hints at this reality: "Deary's claims are exclusively state-law in nature." (ECF No. 15, PageID.366.) So this factor does not weigh clearly in favor of or against abstention.

As to the sixth factor, Deary concedes that the state court would adequately protect her rights. (ECF No. 17, PageID.449 n.6.) So this factor also slightly favors abstention.

The seventh factor—the relative progress of the state and federal proceedings—is related to the fourth factor and tips toward abstention for the same reasons. *See Moses H. Cone*, 460 U.S. at 21 (noting that the order the jurisdiction was obtained is really a matter of "how much progress has been made in the two actions"). So, again, while the federal action was technically filed before Elara's state court

action against Deary, this was only because the state court opted for a new lawsuit against Deary rather than adding her to the existing one. This factor should be measured by *Ewing*, which is significantly more advanced than this case.

The eighth factor—the presence or absence of concurrent jurisdiction—does not weigh heavily in either direction. This factor is largely inapplicable here because, while the source of federal law is the Federal Declaratory Judgment Act, Deary admits that "the state court could hear this claim under MCR 2.605," and so she concedes that this factor might "marginally, if at all, favor[] abstention." (ECF No. 17, PageID.449.) The Court agrees.

Finally, although not a factor explicitly identified by the Sixth Circuit, both that Court and the Supreme Court have suggested that resort to the federal courts as a "defensive tactical maneuver" is relevant to *Colorado River* abstention. *See Moses H. Cone*, 460 U.S. 1, 17 n.20; *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 888 (6th Cir. 2002). The parties spend a great deal of time in their briefs accusing one another of doing just that. Deary accuses Elara of "forum shopping" by filing in state court after its 2019 action in this Court was dismissed without prejudice. But Elara correctly points out that it could not have filed in federal court because it is not diverse from Careline. Elara, in turn, accuses Deary of "pull[ing] out every stop imaginable to subvert the natural order of the litigation . . . in the hopes of buying time to accomplish what the Sixth Circuit has already held to be improper: using a federal declaratory judgment suit to preclude . . . suit in state court." (ECF No. 15, PageID.365–366.) While the Court need not consider these arguments to find

15

*Colorado River* abstention appropriate, it does acknowledge some irregularities in Deary's litigation strategy in this Court: the first complaint was filed two days before a hearing on the motion to add Deary as a defendant in *Ewing*; the filing of this action was used to block the later-filed state court action against Deary; and the amended complaint added legal claims for relief only after Elara invoked the more lenient *Brillhart* standard for declaratory relief. But even assuming no strategic motives, this case still merits *Colorado River* abstention.

In conclusion, two factors weigh against abstention, two factors are neutral, and five factors—including the "paramount" factor of avoiding piecemeal litigation—weigh in favor of abstention. So while the Court acknowledges that, in general, "the balance [is] heavily weighted in favor of the exercise of jurisdiction," it also believes that this is an "exceptional case" warranting abstention. *See Colorado River*, 424 U.S. at 813, 187.

The court will stay this action, pending a final determination in the state case. *See Wilton*, 515 U.S. at 288 n.2 ("[A] stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy."); *Bates v. Van Buren Twp.*, 122 F. App'x 803, 809 (6th Cir. 2004) ("We therefore join other circuits in requiring a stay of proceedings rather than a dismissal in *Colorado River* abstention cases.").

And because it finds that this case satisfies the *Colorado River* standard, the Court does not reach the question of whether Deary has stated a claim for which relief can be granted.

### III. Conclusion

Accordingly, Defendants' motion to dismiss (ECF No. 15) is GRANTED IN PART and this action is STAYED and ADMINISTRATIVELY CLOSED pending the final resolution of the state court action.

Defendants are ORDERED to file a Notice of Status of State Court Proceedings once every six months until the parallel state court action has been fully adjudicated.

Defendants are further ORDERED to file a Notice of Completion of State Court Proceedings as soon as the parallel state court action has been fully adjudicated.

SO ORDERED.

Dated: November 10, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
